## THE AVENGER.

### GILLICAN v. LENOIR MACHINERY & WRECKING CO.

(Circuit Court of Appeals, Fifth Circuit. March 4, 1918.)

#### No. 3130.

SALVAGE ☞32—AMOUNT OF COMPENSATION—RAISING SUNKEN VESSEL.

Libelants contracted to raise and deliver in port a sunken vessel, which they did, although during the progress of the work the owner repudiated the contract. With an expenditure of $85,000, the vessel became worth from $150,000 to $225,000. Libelants lost property by storm, and made expenditures in the prosecution of the work to the amount of $14,000. *Held*, that a salvage award of $17,500 under the general maritime law was justified.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Suit in admiralty by J. B. Lenoir and others, doing business as the Lenoir Machinery & Wrecking Company, against the ship Avenger; W. B. Gillican, claimant. Decree for libelant, and claimant appeals. Affirmed.

See, also, 251 Fed. 19, —— C. C. A. ——.

Palmer Pillans, of Mobile, Ala., for appellant.

Elliott G. Rickarby, of Mobile, Ala. (Jere Austill, of Mobile, Ala., on the brief), for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. Libel by J. B. Lenoir and others, under the name of the Lenoir Machinery & Wrecking Company, against the ship Avenger. Libelants entered into a salvage contract with George J. Santa Cruz representing the owners of the ship. The contract provided that the Wrecking Company would raise the vessel and deliver her in the Mobile river at Mobile, the work to begin in 10 days, and to be completed within 30 days after the expiration of the 10 days. The Wrecking Company was to receive, in addition to $20,000, $1,000 for every period of 5 days saved within the 30 days, and it was to pay to Santa Cruz $1,000 for every 5-day period required beyond the 30 days. It was provided that, if the contractors failed, they were to receive no remuneration.

The vessel was wrecked on Chandeleur Island, off the coast of Louisiana, about 13 years prior to the date of the contract. While the contractors were preparing, within the 10 days provided by the contract, to begin work, the great storm of July 5, 1916, destroyed the barge which was to have been used in the work, and necessitated additional arrangements, which could not be completed within the 10 days.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

As soon as practicable thereafter the contractors began the work. Santa Cruz, claiming that the contract had been forfeited, notified them to discontinue their efforts to salve the ship. This notice was given after it became apparent that the storm had washed away a very considerable part of the sand in which the vessel had been imbedded. The contractors stopped for 2 or 3 days, but, after consultation with their attorneys, resumed work. No additional effort was made by Santa Cruz to prevent this. On the contrary, he extended them aid by providing a necessary hawser. The hull was raised and taken into the Mobile river within 15 days after the expiration of the time provided for by the contract. The contractors presented a demand for $20,000, less $3,000 for the three periods of 5 days each. Payment was refused, and this libel was instituted.

Defendants, answering, set up the facts with reference to the failure to begin work within the time specified, and notice of rescission of the contract. Whereupon libelants filed an amended bill, alleging that, if the contract was no longer in effect, they had performed a salvage service for which they were entitled to proper compensation in excess of the amount named in the contract, and asked an award of $30,000.

Two substantial issues were made by the evidence. Defendants claimed that the hull had been injured by the pounding of the libelants' barge against her sides. Libelants claimed that the injury to the hull had occurred prior to the time of the storm which had destroyed the barge, and suggested that the damage had been occasioned by the washing out of the sand at the ends of the vessel, leaving a bank of packed sand, upon which the hull had pounded, the dent resulting. The evidence as to time and manner of the injury was conflicting. The District Judge held that the injury was not caused by the barge, and the evidence would not justify a reversal of this finding.

The other issue was with reference to the value of the salved vessel. Claimants insist that it was not worth more than $20,000. Libelants introduced evidence of value as high as $75,000. There was also evidence to the effect that, by the expenditure of $85,000, the vessel had become worth from $150,000 to $225,000. The finding of the District Judge that the vessel was worth $50,000 delivered at Mobile river has support in the evidence. The market value at that time is purely incidental. Without reference to whether the hull was worth $50,000, or was without a market value, it is apparent that libelants made very substantial contributions to a ship worth from $150,000 to $225,000. This value is to be considered in determining compensation.

The evidence indicates that libelants, in their efforts to perform the service, lost a barge worth $4,000, and made expenditures to the amount of $10,000. There is evidence that the salved vessel was in an exposed place, and that there was considerable danger to the barge and appliances used in the salving. The court treated the contract as canceled, and made an award under the general maritime law of $17,500. The facts warranted the award.

The judgment is affirmed.